**IN THE UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BENJAMIN H. WHITTAKER III, *In his individual capacity and in his capacities as the Administrator of the Estate of Benjamin H. Whittaker, Deceased; the Administrator of the Estate of Mary S. Whittaker, Deceased; Co-Successor Trustee of the Benjamin H. Whittaker Trust u/a May 1, 1992; and Co-Successor Trustee of the Mary S. Whittaker Trust u/a May 1, 1992*,<br><br>and<br><br>JOAN MUMMERY, *In her individual capacity and in her capacities as the Co-Successor Trustee of the Benjamin H. Whittaker Trust u/a May 1, 1992; and Co-Successor Trustee of the Mary S. Whittaker Trust u/a May 1, 1992*,<br><br>    Plaintiffs,<br>v.<br><br>SUSAN B. WHITTAKER,<br><br>    Defendant. | Civil Case No. _____ |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the above-captioned Plaintiffs, by and through their undersigned counsel, and hereby files this Complaint in Civil Action and in support thereof avers as follows:

## PARTIES

1.  Plaintiff, Benjamin H. Whittaker, III ("Ben") is an adult individual residing in the State of Ohio.  Ben is also the Administrator of the Estate of Benjamin H. Whittaker, Deceased and Mary S. Whittaker, Deceased.

2.      Plaintiff, Joan Mummery ("Joan"), is an adult individual residing in the State of Virginia.

3.      Ben and Joan are Co-Successor Trustees and Beneficiaries of the Benjamin H. Whittaker Trust u/a May 1, 1992 and the Mary S. Trust u/a May 1, 1992.

4.      Defendant, Susan B. Whittaker, is an adult individual residing and receiving mail at 47 Colburn Road, Wellesley, MA 02481.

5.      The Plaintiffs, Ben[1] and Joan Mummery ("Joan")[2] (hereinafter collectively referred to as "Plaintiffs"), are citizens of the States of Ohio and Virginia, respectively, and for purposes of this proceeding can be served with notice at: c/o Kirk B. Burkley, Esq. and Arthur Zamosky, Esq., Bernstein-Berkley, P.C., 707 Grant Street, Suite 2200 Gulf Tower, Pittsburgh, PA  15219.

6.      The Defendant, Susan B. Whittaker, is an adult individual with an address of 47 Colburn Road, Wellesley, MA  02481 (hereinafter "Defendant" or "Susan").

## NAUTRE OF THE ACTION

7.      The instant Complaint concerns the transfer of funds to Susan by her husband, James B. Whittaker ("Jay") of funds entrusted to him by Benjamin H. Whittaker ("Father") and Mary S. Whittaker ("Mother") (collectively referred to as "Decedents" or "Parents"), in his capacity as successor trustee to the *inter vivos* trusts of his Parents and pursuant to durable powers of attorney and the believed concealment thereof.

---

[1] In his individual capacity and in his capacities as the Administrator of the Estate of Benjamin H. Whittaker, Deceased; the Administrator of the Estate of Mary S. Whittaker, Deceased; Co-Successor Trustee of the Benjamin H. Whittaker Trust u/a May 1, 1992; and Co-Successor Trustee of the Mary S. Whittaker Trust u/a May 1, 1992.
[2] In her individual capacity and in her capacities as Co-Successor Trustee of the Benjamin H. Whittaker Trust u/a May 1, 1992 and Co-Successor of the Mary S. Whittaker Trust u/a May 1, 1992.

## JURISDICITON AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), in that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and the action is between citizens of different states.

9.     Venue properly lies in this Court under 28 U.S.C. § 1391 in that the Defendant resides in this judicial district.

## BACKGROUND

10.     Plaintiffs incorporate the above-state paragraphs as if set forth fully herein.

11.     Prior to his death, the Father entered into his Amended and Restated Revocable Living Trust Agreement on May 1, 1992, with Carol Bell ("Carol") as Trustee, pursuant to the terms of which Jay was designated as a Successor Trustee (hereinafter "Father's Trust Agreement").

12.     A true and correct copy of the Father's Trust Agreement is attached hereto as Exhibit "A".

13.     Prior to her death, the Mother entered into her Amended and Restated Revocable Living Trust Agreement on the May 1, 1992, with Carol as Trustee, pursuant to the terms of which Jay was designated as a Successor Trustee (hereinafter "Mother's Trust Agreement").

14.     A copy of the Mother's Trust Agreement is attached hereto as Exhibit "B".

15.     The Father's Trust Agreement and the Mother's Trust Agreement are together referred to as the "Family Trusts".

16.     Under the terms of the Family Trusts, the Parents designated Jay, Carol, Joan, Ben, and all of their grandchildren as the residuary beneficiaries of the Trusts after the death of both Parents (after expiration of one or more lifetime trusts for the benefit of the surviving Parent).

3

**The Trust Assets**

17.     In or around October 3, 2006, the Parents' owned investment accounts on deposit at Merrill Lynch, Fidelity and Vanguard with a combined deposit value of approximately $1.072 million; real estate in Euclid, Ohio, and Key West, Florida, with a combined fair market value of approximately $1.250 million; life insurance policies of undetermined value; and a joint and survivorship checking account at KeyBank, (the "KeyBank Account") for which the Father and Mother were the only title holders (hereinafter collectively referred to as the "Trust Assets").

18.     On or about September 19, 2006, Carol resigned her then-current position as Trustee under the Family Trusts on or about September 19, 2006, in favor of Jay, who was the named Successor Trustee (hereinafter "Trustee") under the Family Trusts.

19.     A true and correct copy of the Instruments of Successorship are attached hereto as Exhibits "C" and "D".

20.     The Father appointed Jay his Attorney-In-Fact pursuant to a Durable Power of Attorney executed in Cleveland, Ohio, on or about October 3, 2006 (hereinafter "Father's Power of Attorney").

21.     A true and correct copy of the Father's Durable Power of Attorney is attached hereto as Exhibit "E".

22.     The Mother appointed Jay her Attorney-In-Fact pursuant to a Durable Power of Attorney executed at Cleveland, Ohio, on or about October 3, 2006 (hereinafter "Mother's Power of Attorney").

23.     A true and correct copy of the Mother's Durable Power of Attorney is attached hereto as Exhibit "F".

24.     The Father's Durable Power of Attorney and the Mother's Durable Power of Attorney shall hereinafter be referred to together as "Powers of Attorney".

## Loss of Trust Assets

25.     Upon taking over control of the Trust Assets, Jay proceeded to systematically consolidate and dissipate them.

26.     In October of 2006, Jay combined his Parents' Merrill Lynch, Fidelity and Vanguard investment accounts into one single Fidelity account, Account #Z66-174653, titled in Father's name.

27.     As of September of 2009, the value of the combined account was $1,169,234.41.

28.     As of December 31, 2011, through the Jay's withdrawals and losses, the Fidelity Account had a value of $29.21.

29.     It is believed and therefore averred that Defendant was aware of this activity by Jay and materially benefitted therefrom, causing Plaintiffs harm.

## Funds Transferred to the Timeshare

30.     Defendant and Jay used funds from the Trust to purchase and upgrades to a timeshare in Mexico ("Timeshare").

31.     The Timeshare is owned by both Jay and Defendant.

32.     The total amount of unauthorized Trust funds used to pay for the Timeshare purchased by the Defendant and Jay was $107,500.00.  ("Timeshare Transfers")

33.     Both Defendant and Jay visited the Timeshare over the years and enjoyed a benefit therefrom.

34.     The Timeshare Transfers taken from the Trust by the Defendant and Jay pay for the Timeshare and its upgrades has never been paid back into the Trust.

35.     The Timeshare Transfers to pay for the Timeshare enjoyed by the Defendant were unauthorized and made for her and Jay's personal use.

### Funds diverted to TradeStation Account

36.     Jay diverted funds from the Trust to he and Defendant's personal TradeStation account.

37.     It is believed that the total amount of funds that were transferred from the Trust and to Jay and Defendant's personal TradeStation account was $48,000.00.  ("TradeStation Transfers")

38.     The TradeStation Transfers were never paid back into the Trust.

39.     The TradeStation account to which the funds were transferred was held by Defendant and Jay.

40.     The TradeStation Transfers were not authorized and made for personal use and benefit of Defendant and Jay.

### Encumbrance of Assets

41.     Defendant and Jay entered into mortgage transactions with Fiserv Lending Solutions of Chicago, Illinois in the amount of $209,000 on April 29, 2008, and which became the subject of a subordination agreement on or about April 21, 2011, when Susan and Jay entered into a mortgage agreement with the Rockland Trust Company of Middleboro, Massachusetts in the amount of $367,000 that had been satisfied.

42.     Subsequent to entering into the mortgage agreement with Rockland Trust Company on or about April 21, 2011, Defendant and Jay entered into a second mortgage agreement with the Rockland Trust Company in the amount of $350,000 on July 23, 2012, that remains unsatisfied.

43.     The mortgage encumbered Defendant's and Jay's residence at 47 Colburn Road, Wellsley, Massachusetts.

44.     By the time that Defendant and Jay entered into the first mortgage agreement with Rockland Trust, they knew that the Parents' account at Fidelity had an asset value of less than $10,000.

45.     It is believed and therefore averred that the fund received by Defendant as a result of some or all of the aforementioned mortgages were transferred to pay for the Timeshare.

**Other Actions**

46.     As a result of the losses sustained to Plaintiffs through the actions of the Defendant, Plaintiffs initiated a complaint (the "Probate Complaint") in the Probate Division in the Court of Common Pleas of Cuyahoga County, Ohio (the "Probate Court") on or about February 15, 2013 at docket number 2013 ADV 18637 against James B. Whittaker, KeyBank N.A., and a Jane Doe Defendant.  (the "Ohio Litigation").

47.     The Jay commenced a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of Massachusetts at Bankruptcy Case No.: 13-15310 on September 5, 2013 which stayed the Ohio Litigation.   In relation to that action, Plaintiffs filed a non-dischargeability complaint against Jay ("Non-Discharge Action").

48.     During the pendency of the Non-Discharge Action, Plaintiffs attempted to obtain certain documents related to the matter and the Defendant and Defendant's deposition and those requests were met with a Motion for a Protective Order.

49.     The Bankruptcy Court eventually permitted the deposition of Defendant which took place on September 4, 2014.

50.     Plaintiffs were not aware and could not have reasonably discovered the existence and nature of the above-referenced transfers and how they related to Defendant until after her deposition on September 4, 2014.

7

## COUNT I – VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT PURSUANT TO M.G.L.A. 109A § 1

51.     Plaintiffs hereby incorporate the above-stated paragraphs as if set forth fully herein.

52.     The transfers that were made to Defendant are recoverable under MCLA 109(A)§§1-12 ("Fraudulent Transfer Act") and/or any other parallel state Fraudulent Transfer statute.

53.     For purposes of the Fraudulent Transfer Act, the Plaintiffs are creditors and have a valid claim.

54.     Under M.C.L.A. 109(A) §5, sets forth that a transfer "is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made…, if the debtor made the transfer or incurred the obligation…with actual intent to hinder, delay, or defraud any creditor of the debtor…"

55.     The aforementioned transfers were made and/or obligations incurred with the actual intent to hinder, delay or defraud Plaintiffs.

56.     The aforementioned transfers were made and/or obligations incurred without receiving a reasonably equivalent value in exchange and a time that Jay's assets were unreasonably small and.or when he believed or should have believed that he would have debts beyond his ability to pay.

57.     Further, it is believed that the transfers were made and/or obligations incurred under M.C.L.A. 109(a)§6, which states that a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

58.     By virtue of the actions and omissions described, Plaintiffs are and have been, at all times, creditors of both Jay and the Defendant.

59.     The Defendant was the transferor and/or transferee of the transfers made and/or obligations occurred in relation to the Timeshare and the TradeStation account.  It is also believed that Defendant is in receipt of other transfers that will be determined though discovery.

60.     It is believed that Defendant received the transfers at less than equivalent value.

61.     It is believed that at the time of the transfers, Jay was insolvent or became insolvent as a result.

62.     Among other "badges of fraud", Defendant is an "insider" pursuant to M.C.L.A. 109(a)§5(b) creating a *prima facie* case and rebuttable presumption that the transaction is void.

63.     It is believed that Defendant and Jay retained control of the assets after the transfer.

64.     It is believe that the transfer was concealed.

65.     It is believed that the transfers meet other "badges of fraud" set forth in M.C.L.A. 109(a)§5(b) a manner to be proven at trial.

66.     By virtue of her acceptance of fraudulently transferred assets, Defendant has inflicted damages upon Plaintiffs in an amount set forth above and is still being investigated, as a result of which Defendant is liable to them for damages, including compensatory and punitive damages, injunctive relief, disgorgement, reasonable attorney's fees and litigation expenses.


WHEREFORE, the Plaintiffs hereby pray that judgment be entered against Susan B. Whittaker and the following relief be granted:

a.      That a judgment be entered voiding the transfer of the funds that were fraudulent conveyed and awarding Plaintiffs a cash judgment in the amount of said transfers to the to the full extent permitted by law;

b.      Actual damages, including compensatory and consequential, and punitive damages,

in an amount to be determined at trial;

       c.     An award of costs to the Plaintiffs, including reasonable attorney, accountant and other expert fees and disbursements; and

       d.     Such other relief, both at law and in equity, as may be just and proper.


Respectfully submitted,

BENJAMIN H. WHITTAKER, III,
CAROL BELL, AND
JOAN MUMMERY,

By their attorneys,


  _/s/ Michael K. O'Neil_____
Michael K. O'Neil (BBO # 685025)
MURPHY & KING, P.C.
One Beacon Street
Boston, Massachusetts 02108
T: (617) 423-0400
F: (617) 423-0498
moneil@murphyking.com


and

Arthur W. Zamosky, Esq.
PA I.D. #86514 (*Pro Hac Vice* Motion Pending)
azamosky@bernsteinlaw.com
Bernstein-Burkley, P.C.
Suite 2200, Gulf Tower
Pittsburgh, PA 15219
(412) 456-8100


Dated: June 12, 2015

690306